# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| OTTOMANSON, INC.,<br><br>                    Plaintiff,<br><br>    v.<br><br>AMERITU TRADING, INC. and WELL WOVEN, INC.,<br><br>                    Defendants. | Civil Action No. 21-12177 (JXN)(JBC)<br><br><u>**OPINION**</u> |

<u>**NEALS**</u>, District Judge

Before the Court is Defendants Ameritu Trading, Inc. ("Ameritu") and Well Woven, Inc.'s ("Well Woven") (collectively "Defendants") motion for summary judgment pursuant to Federal Rule of Civil Procedure[1] 56. (ECF No. 104.) Plaintiff Ottomanson, Inc. ("Plaintiff") opposed the motion (ECF No. 105), and Defendants replied in further support (ECF No. 106). Also before the Court is Plaintiff's motion for partial summary judgment pursuant to Rule 56. (ECF No. 107.) Defendants opposed the motion (ECF No. 108), and Plaintiff replied in further support (ECF No. 109). The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 1338(a). Venue is proper pursuant to 28 U.S.C. § 1391 and § 1400. The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motion for summary judgment is **DENIED**, and Plaintiff's motion for partial summary judgment is **DENIED**.

---

[1] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

I.    **BACKGROUND**[2]

This case is about the designs for three Turkish rugs ("Original Designs"). (PSOMF ¶¶ 4–5.) Concord Global Trading, Inc. ("Concord") and Dinarsu Imalat ve Tic. T.A.S. ("Dinarsu") co-authored the Original Designs in 2010. (DSOMF ¶ 1). Concord first published the Original Designs the same year.[3] (*Id.* ¶ 3.) Plaintiff, an importer and seller of Turkish rugs, began selling rugs with the Original Designs in 2013. (PSOMF ¶ 4.)

On March 5, 2018, Plaintiff obtained a Certificate of Registration ("Certificate") from the U.S. Copyright Office for the Original Designs, described as "OTH2090 (or OTH2092, or OTH2095)." (DSOMF ¶ 5; *see also* Second Am. Compl. ("SAC") Ex. 4 ("Certificate"), ECF No. 33.) The Certificate lists the completion year as 2013 and publication date as November 27, 2013. (DSOMF ¶¶ 8–9.) The Certificate identifies Plaintiff as the copyright claimant, states Plaintiff acquired exclusive rights through a "written agreement," and lists Dinarsu as the sole author. (*Id.* ¶¶ 11, 13–14.) Plaintiff referenced the written agreement in correspondence with its copyright attorney, but it is unclear whether Plaintiff ever sent the written agreement to counsel. (*Id.* ¶¶ 16–17.) Nor did Plaintiff provide the written agreement to its current counsel before filing this lawsuit. (*Id.* ¶ 15.) As of the motions' filing dates, a copy of the written agreement referenced in the Certificate could not be found. (*Id.* ¶ 20.) In deposition testimony, Plaintiff's Chief Operating

---

[2] The facts derive from Defendants' Statement of Undisputed Material Facts ("DSOMF") (ECF No. 104-18); Plaintiff's Response to Defendant's Statement of Facts ("PRSOMF") (ECF No. 105-1); Plaintiff's Statement of Undisputed Material Facts ("PSOMF") (ECF No. 107-1); and Defendants' Response to Plaintiff's Statement of Facts ("DRSOMF") (ECF No. 108-1); along with the supporting documents to the pending motions. For the sake of brevity, all citations to the parties' Rule 56.1 statements incorporate the evidentiary citations contained therein.

[3] To support this assertion, Defendant cites email correspondence between Plaintiff and Dinarsu. (*Id.*; *see also* Defs.' Ex. E, ECF No. 104-6.) Plaintiff summarily claims, "there is insufficient evidence to determine the date Concord first published the [Original Designs]." (PRSOMF ¶ 3.) But to show "a fact cannot be or is genuinely disputed," the party must cite to the record or demonstrate "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Plaintiff does neither. So, the Court considers the statement undisputed. *Estate of Lewis v. Cumberland County*, No. 16-3503, 2019 WL 7047220, at *2–3 (D.N.J. Dec. 23, 2019).

Officer could not confirm that the written agreement existed, and their Principal, Rumi Durmaz ("Durmaz"), did not recall ever seeing it. (*Id.* ¶¶ 18–19.) Durmaz, however, testified that the rights for the Original Designs were assigned to Plaintiff through an oral agreement. (*Id.* ¶ 22; Defs.' Ex. I ("Durmaz Dep") 48:15–49:11, 66:10–16, ECF No. 104-10.)

Defendants also import and sell Turkish rugs. (*See id.* ¶¶ 1–4; SAC ¶ 22.) Plaintiff alleges the designs for some of those rugs ("Disputed Designs") infringe on the Original Designs. Here are the rugs side by side:

**<u>ORIGINAL DESIGNS</u>**



**<u>DISPUTED DESIGNS</u>**



(SAC Ex. 1-3, 5-7, ECF No. 33.)

Plaintiff filed suit on June 6, 2021, alleging copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 106, 501, and 1202(b) for the Original Designs. (*See* Compl., ECF No. 1.) Plaintiff amended the complaint twice. (*See* First Am. Compl., ECF No. 13; SAC.) On August 10, 2023, Dinarsu and Plaintiff executed a Rug Design Ownership and Exclusive Sales Agreement ("Dinarsu Agreement"), made effective as of January 1, 2013, to "transfer all rights, including copyrights, trademarks, and other intellectual property" to Plaintiff "prior to the Certificate of Registration." (DSOMF ¶ 27; Defs.' Ex. L ("Dinarsu Agreement"), ECF No. 104-13.) On August 28, 2023, Concord executed an affidavit ("Concord Agreement"), stating that prior to January 1, 2013, Concord transferred to Plaintiff "all rights, including copyrights, trademarks, and other intellectual property rights" to the Original Designs. (DSOMF ¶¶ 31–33; Defs.' Ex. M ("Concord Agreement"), ECF No. 104-14.)

On January 7, 2025, Defendants moved for summary judgment. (Defs.' Mot. Summ. J., ECF No. 104.) Plaintiff filed a brief in opposition (Pl. Opp'n, ECF No. 105), and Defendants filed a reply in further support (Defs.' Reply, ECF No. 106). On the same day, Plaintiff also moved for partial summary judgment (Pl.'s Moving Br., ECF No. 107.) Defendants filed a brief in opposition (Defs.' Opp'n, ECF No. 108), and Plaintiff replied in further support (Pl.'s Reply, ECF No. 109). The motions are ripe for the Court to decide.

## II.   <u>LEGAL STANDARD</u>

The Court must grant a summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

4

The moving party has the burden of showing no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

The Court may not make credibility determinations or weigh evidence. *Anderson*, 477 U.S. at 255. "All facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The non-moving party, however, must offer more than a "mere scintilla" of evidence that a genuine dispute of material fact exists. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (citation omitted). Furthermore, "a party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations." *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001) (citation omitted).

When the parties file cross-motions for summary judgment, the governing standard "does not change." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468–69 (D.N.J. 2002) (citing *Weissman v. U.S. Postal Serv.*, 19 F. Supp. 2d 254, 259 (D.N.J. 1998)). The Court must consider the motions independently, in accordance with the principles outlined above. *Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 184 (D.N.J. 2009); *Williams v. Phila. Hous. Auth.*, 834 F. Supp. 794, 797 (E.D. Pa. 1993), *aff'd*, 27 F.3d 560 (3d Cir.1994). In other words, the Court is not required to grant one motion because it denies the other.

## III.    **DISCUSSION**

The parties each move for summary judgment on multiple grounds. Defendants argue: (1) the Certificate is invalid because the Original Designs were published more than five years ago

and the registration application contains mistakes of fact; (2) Plaintiff lacks standing to enforce the Certificate because the record does not contain a written agreement showing Plaintiff had exclusive rights to the Original Designs; and (3) there is no infringement because the Original and Disputed Designs are not probatively or substantially similar. (Defs.' Moving Br. at 12–36, ECF No. 104-19.) Plaintiff, in turn, moves for partial summary judgment to declare that: (1) Defendants lack standing to challenge Plaintiff's standing; (2) Plaintiff has standing to enforce the Certificate; and (3) the Certificate is valid and enforceable. (Pl. Moving Br., ECF No. 107-3.)

Copyright infringement has two elements: (1) plaintiff owns a valid copyright, and (2) defendant copied the constituent, original elements of the work. *Feist Pubs, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *Dam Things from Den. v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 561 (3d Cir. 2002). "Copying is proven by showing not only that the defendant had access to a copyrighted work, but also that there are substantial similarities between the two works." *Dam Things from Den.*, 290 F.3d at 561. Copying is actionable if "viewing the item through the lay person's eyes," the two works have "substantial similarities relate[d] to protectible material." *Id.* at 562. The Court addresses each element in turn.

### A.    Ownership of a Valid Copyright

The first element of copyright infringement "requires the plaintiff to show ownership of the copyright in question." *Roshan v. N.J. Inst. of Tech.*, No. 24-10933, 2025 WL 2463146, at *5 (D.N.J. Aug. 27, 2025) (quoting *Beom Su Lee v. Karaoke*, No. 18-8633, 2019 WL 2537932, at *5 (D.N.J. June 19, 2019)). A copyright is presumed valid "where a plaintiff has produced a valid copyright certificate which was obtained within five years of the date when the work was first

published."[4] *Karaoke*, 2019 WL 2537932, at *6 (quoting 17 U.S.C. § 410(c)). "This presumption of validity is rebuttable, and the burden shifts to the defendant to prove that the plaintiff's copyrights are invalid." *Id.* "Moreover, the failure to obtain a registration within five years does not render a copyright invalid. Rather, the plaintiff in that situation is simply not entitled to a presumption of validity." *Id.* A defendant's burden of rebutting the presumption varies with the issues bearing on the validity of the copyright. *Andrien v. S. Ocean Cnty. Chamber of Com.,* 927 F.2d 132, 134 (3d Cir. 1991); *see also Masquerade Novelty, Inc. v. Unique Indus., Inc.,* 912 F.2d 663, 668 (3d Cir.1990).

Defendants argue Plaintiff does not own a valid copyright for the Original Designs because (1) the Original Designs were published more than five years before the Certificate issued, and (2) the registration application contained mistakes of fact.

### i.    *Registration*

The first point merits only brief consideration. "[F]ailure to obtain a registration within five years does not render a copyright invalid." *Karaoke*, 2019 WL 2537932, at *6. It just means Plaintiff must offer evidence showing their copyright is valid. Even so, the Court may give a late copyright registration the "weight of prima facie evidence" of validity. *Id.* (quoting *Cameron v. Graphic Mgmt. Assocs., Inc.*, 817 F. Supp. 19, 23 (E.D. Pa. 1992)). Framed in the language of summary judgment, the length of time between publication and registration is not evidence upon which "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at

---

[4] Copyright in a work exists at the inception of that work. *See* Melville B. Nimmer and David Nimmer, *2 Nimmer on Copyright* § 7.16(A)(1). The Original Designs are subject to copyright protection per 17 U.S.C. § 102(a)(5) under the category of pictorial and graphic designs. Copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). "As a general rule, the author is the party who actually creates the work." *Cmty. for Creative Non–Violence v. Reid,* 490 U.S. 730, 737(1989).

248. And so, the gap between publication and registration does not, by itself, warrant summary judgment for Defendants.

### ii.    *Application Mistakes*

Defendants also argue Plaintiff's copyright is invalid because Plaintiff made mistakes of fact in its application for registration, which, "if known, would have caused the Register of Copyrights to refuse registration." (Defs.' Moving Br. at 15–17 (quoting 17 U.S.C. § 411(b)(1)).) Defendants claim Plaintiff knowingly misstated: (a) when the Original Designs were published (2010, not 2013); (b) that Plaintiff was assigned the rights to the Original Designs through a written agreement (rather than an oral one); and (c) that Dinarsu authored the Original Designs (as opposed to Dinarsu and Concord). (*Id.*)

A valid copyright is a prerequisite to bringing an infringement action. *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 595 U.S. 178, 181 (2022). A certificate of registration is valid regardless of whether it contains inaccurate information unless:

> **(A)** the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and

> **(B)** the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b)(1). Simply put, "a certificate of registration is valid even though it contains inaccurate information, as long as the copyright holder lacked 'knowledge that it was inaccurate.'" *Unicolors, Inc.*, 595 U.S. at 182. "Lack of knowledge of either fact or law can excuse an inaccuracy in a copyright registration." *Id.* Knowledge "means actual, subjective awareness of both the facts and the law." *Id.* at 185. However, "courts need not automatically accept a copyright holder's claim that it was unaware of the relevant legal requirements of copyright law." *Id.* at 187. "[W]illful blindness may support a finding of actual knowledge." *Id.* "Circumstantial evidence, including the

significance of the legal error, the complexity of the relevant rule, the applicant's experience with copyright law, and other such matters, may also lead a court to find that an applicant was actually aware of, or willfully blind to, legally inaccurate information." *Id.* at 187–88.

Here, Defendants argue Plaintiff's assertions in the registration application—that the Original Designs were published in 2013, assigned via written agreement, and authored by Dinarsu—were false. (Defs.' Moving Br. at 15–17.) But Defendants do not point to any evidence showing Plaintiff *knew* those statements were false or willfully ignored their falsity.[5] Even if the Court assumes Plaintiff made mistakes in its copyright application, Defendants have not produced evidence to show Plaintiff did so knowingly or in willful ignorance.[6] Presuming intent without any evidence "is too far a leap for the Court to accept based on attorney argument alone." *Roshan*, 2025 WL 2463146, at *6.

Even if Defendants showed Plaintiff intentionally misrepresented information on its registration application, it is not clear that any of the purported misstatements "would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1)(B). "Courts in this Circuit have found misrepresentations of dates in copyright registration to be immaterial, and 'it is not clear that even knowing misrepresentations can void a copyright registration where the Register has not relied on them.'" *Roshan*, 2025 WL 2463146, at *6 (quoting *Gallup, Inc. v. Kenexa Corp.*, 149 F. App'x 94, 96 (3d Cir. 2005)). *See also Mon Cheri Bridals, Inc. v. Wen Wu*, 383 F. App'x

---

[5] Moreover, the record reflects a lack of intent. In his deposition, Durmaz explained he listed Dinarsu as the author because it was the "producing company" and because Concord "didn't request the copyright." (Durmaz Dep. 61:8–62:25.) And, when Plaintiff's copyright attorney asked for copyright information, including how the Original Designs were assigned to Plaintiff, (ECF No. 104-2, at *10), Plaintiff replied with a spreadsheet indicating the existence of a written agreement, (*id.*; *see also* ECF No. 104-4, at *28).

[6] Defendants fault Plaintiff's lawyer for not investigating Plaintiff's claims of ownership. But "at most, those facts show that the lawyer acted recklessly." *Design With Friends, Inc. v. Target Corp.*, No. 21-1376, 2024 WL 4103737, at *2 (D. Del. Sept. 6, 2024). The facts, however, do not reflect intent or willful blindness.

228, 232 (3d Cir. 2010) (failure to disclose works as derivative immaterial); *Mortg. Mkt. Guide, LLC v. Freedman Rep., LLC*, No. 06-140, 2008 WL 2991570, *17–18 (D.N.J. July 28, 2008) (omitting title and nation of work immaterial); *Morelli v. Tiffany & Co.*, 186 F. Supp. 2d 563, 566 (E.D. Pa. 2002) (incorrectly naming author instead of company as owner immaterial).

Plaintiff's application to the Copyright Office specifically identified the articles for which registration was sought and specifically listed a "written agreement" as being among the materials submitted for consideration. In the end, the Copyright Office issued the registration. Thus, the record is devoid of evidence upon which the Court can presume that the Copyright Office lacked the information necessary to determine whether to register Plaintiff's copyright and deny Plaintiff's entitlement "to pursue its infringement action and to enjoy the benefits of 17 U.S.C. § 410(c)." *See Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 668 (3d Cir. 1990).

Viewing the facts in a light most favorable to Plaintiff as the non-moving party, *Boyle*, 139 F.3d at 393, Defendants have not shown that Plaintiff *knew* the information it submitted was inaccurate. Accordingly, the Court denies Defendants' request to invalidate the copyright registration by way of summary judgment.[7]

---

[7] Because Defendants failed to prove Plaintiff knew the information in its application was false, or that such information was material, it denies Defendants' request to refer the matter to the Register of Copyrights. The "overwhelming weight of case law" has concluded "courts can demand that the party seeking invalidation first establish that the other preconditions to invalidity . . . are satisfied before obtaining the Register's advice on materiality." *Real World Media LLC v. Daily Caller, Inc.*, 744 F. Supp. 3d 24, 42 (D.D.C. 2024) (quoting *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 625 (7th Cir. 2013)). *See also Design With Friends*, 2024 WL 4103737, at *3 ("Because Target's evidence does not show that Design knew of the inaccuracies in its deposit, I deny Target's request to invalidate the copyright registration. I also deny its motion to refer its quibbles to the Register of Copyrights.")

### B.    Standing

Defendants next argue Plaintiff lacks standing to sue for copyright infringement on the Original Designs because (1) the Certificate is invalid, (2) there is no written agreement assigning the Original Designs to Plaintiff, and (3) to the extent an oral agreement exists, it is invalid.

#### i.    *Validity of the Copyright*

A copyright registration is "a prerequisite for bringing a 'civil action for infringement' of the copyrighted work." *Unicolors*, 595 U.S. at 181 (quoting 17 U.S.C. § 411(a)). But the registration requirement "does not restrict a federal court's subject-matter jurisdiction." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 170 (2010). Whether a copyright is valid goes to the merits, not the Court's jurisdiction. *Id.* As discussed above, Defendants have not shown the absence of a genuine dispute as to whether Plaintiff's Certificate is valid. Thus, summary judgment is not warranted on that basis.

#### ii.    *Transfer of Copyright Interest*

Copyright ownership is freely transferable "by any means of conveyance or by operation of law." 17 U.S.C. § 201(d). The copyright owner may convey the copyright as "an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place." 17 U.S.C. § 101. However, transferring copyright ownership by conveyance "is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a). "When interpreting an agreement purporting to assign copyrights, courts look to state contract law." *Stockfood Am., Inc. v. Adagio Teas, Inc.*, 475 F. Supp. 3d 394, 403 (D.N.J. 2020). *See also TD Bank N.A. v. Hill*, 928 F.3d 259, 273 (3d Cir. 2019). "Although federal copyright law

11

creates the rights at stake, state law still controls issues of contract interpretation." *Stockfood Am.*, 475 F. Supp. 3d at 403 n.9 (citing *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 412 (2d Cir. 2018)).

Here, the parties continuously refer to the change in copyright ownership as a "transfer" or "assign[ment]" of rights. (*See* DSOMF ¶¶ 22–23.) The assignment of a copyright "is a manifestation of the assignor's intention to transfer [the copyright] by virtue of which the assignor's [copy]right . . . is extinguished in whole or in part and the assignee acquires [the copyright]." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 831 (3d Cir. 2011) (alteration in original) (quoting Restatement (Second) of Contracts § 317(1)). To complete an assignment, the assignor need only "manifest an intention to transfer the right to another person." *Id.* (quoting Restatement (Second) of Contracts § 324). Copyright assignments "constitute a conveyance of a property right that can be accomplished by gift, no less than by sale. 3 *Nimmer on Copyright* § 10.02 (2025).

Plaintiff claims Concord and Dinarsu verbally agreed to assign the Original Designs to Plaintiff. (DSOMF ¶ 22; Durmaz Dep at 48:15–49:11, 66:10–16.) In August 2023, Plaintiff entered written agreements with Concord and Dinarsu purporting to transfer the rights to the Original Designs to Plaintiff as of 2013. (DSOMF ¶¶ 27–33.)

Defendants argue Dinarsu and Concord did not validly assign the Original Designs to Plaintiff—and, therefore, Plaintiff lacks standing to maintain a copyright suit—because (a) no contemporaneous written assignment agreement exists, as required under 17 U.S.C. § 204, and (b) the evidence of an oral agreement is self-serving and inconsistent. Neither argument, however, warrants entry of summary judgment for Defendants.

To start, while § 204(a) requires a signed writing from the transferor of a copyright, such a writing need not be contemporaneous. § 204 "specifically contemplates a post-hoc 'note or memorandum of the transfer,' as distinct from an 'instrument of conveyance,' as a permissible means of satisfying the Act's writing requirement." *Barefoot Architect*, 632 F.3d at 827. "Under the statute's plain terms[,] it is clear that an oral transfer can be given legal effect by a subsequent signed writing." *Id.* The statute, therefore, allows "enforcement of oral agreements through the same sorts of later-drafted, informal writings that are universally held to satisfy the statute of frauds in the contract setting." *Id.* at 829. Thus, contrary to Defendants' arguments, oral copyright transfer agreements are not *per se* invalid. Parties can satisfy § 204(a)'s writing requirement with an oral agreement and a subsequent signed writing. The mere fact that the parties orally agreed to transfer the Original Designs does not warrant summary judgment.

In any event, the "the chief purpose of section 204(a) (like the Statute of Frauds) is to resolve disputes between copyright owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership." *Id.* at 830 (quoting *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.*, 70 F.3d 96, 99 (11th Cir. 1995)). "At least where there is no dispute between transferor and transferee regarding the ownership of a copyright, there is little reason to demand that a validating written instrument be drafted and signed contemporaneously with the transferring event." *Id.* "[A] third-party infringer in such a case cannot evade liability by invoking § 204(a) and demanding a contemporaneously-drafted instrument." *Id.* Here, Plaintiff, Concord, and Dinarsu all agree Plaintiff owns the copyright to the Original Designs. So, Defendants cannot use § 204 to avoid liability.[8]

---

[8] Defendants argue the Dinarsu and Concord Agreements are inherently unreliable because they were produced during litigation. (Defs.' Moving Br. at 21.) This argument is unpersuasive. In deciding a summary judgment motion, the Court does not weigh evidence. *Anderson*, 477 U.S. at 255. But "if it is clear that an affidavit is offered solely for the

But this does not end the inquiry. "For a writing to 'validate' a past transfer, the past transfer must have actually occurred." *Id.* at 830. Plaintiff must prove the past transfer occurred through evidence "extrinsic to the writing" itself. *Id.* at 832. A post-hoc writing cannot "simultaneously" prove an oral transfer occurred and give that transfer legal effect. *Id.* "If it could, a distantly post-hoc writing would be capable of rendering enforceable a (possibly fictional) 'transfer' that purportedly took place years or decades earlier but for which there is no independent evidence." *Id.* Here, Durmaz testified that Plaintiff acquired the rights to the Original Designs through a verbal agreement.[9] (*See* Durmaz Dep at 48:15–49:11, 66:10–16.) Accordingly, there is a genuine dispute of fact about the past transfer of rights to Plaintiff.

At the summary judgment stage, the Court's only job is to "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. And the Court must view the evidence "in the light most favorable to the nonmoving party." *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020). Here, Defendants have failed to show that the evidence about the existence of a prior oral agreement is so one-sided that Defendants must prevail as a matter of law.[10]

---

purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate." *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). Here, neither the Concord nor Dinarsu Agreements were offered solely for the purpose of defeating summary judgment. Indeed, they were submitted two years before the instant motions.

[9] Durmaz testified that Plaintiff and Concord entered the oral agreement. (Defs.' Moving Br. at 24–25.) Defendants argue the oral agreement was invalid because Concord could not transfer Dinarsu's ownership interest to Plaintiff. Dinarsu and Concord co-authored the Original Designs. (DSOMF ¶ 1.) And "a co-author cannot transfer the ownership interest of his co-author." *Brownstein v. Lindsay*, 742 F.3d 55, 68 (3d Cir. 2014). But Durmaz did *not* testify that there was *no* oral agreement with Dinarsu, or that Dinarsu was not a part of the oral agreement with Concord. The extent of the oral agreement between Plaintiff, Concord, and Dinarsu is a question for the jury. *McDonnell v. Engine Distribs.*, 314 F. App'x 509, 511 (3d Cir. 2009) ("The formation of an enforceable contract is a question of fact.").

[10] And likewise, because there is a genuine issue as to whether Dinarsu entered the oral agreement, the Court denies Plaintiff's motion for partial summary judgment on the issue of the oral agreement.

C.    **Unauthorized Copying**

The second element of copyright infringement, unauthorized copying, has two components: "actual copying and material appropriation of the copyrighted work." *Tanksley v. Daniels*, 902 F.3d 165, 173 (3d Cir. 2018). "Actual copying focuses on whether the defendant did, in fact, use the copyrighted work in creating his own." *Id.* "If the defendant truly created his work independently, then no infringement has occurred, irrespective of similarity." *Id.* "In the great majority of cases, a plaintiff will lack direct evidence of copying, which may instead be shown through circumstantial evidence of access and [probative] similarity." *Id.* "Access means that an alleged infringer had a reasonable possibility—not simply a bare possibility—of [seeing] the prior work; access cannot be based on mere speculation or conjecture." *Bruzzese v. Passages Int'l, Inc.*, No. 23-23047, 2025 WL 1779217, at *7 (D.N.J. June 27, 2025) (alteration in original) (quoting *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 51 (2d Cir. 2003)). To find probative similarity, "the finder of fact may consider any aspect of the works that supports an inference of copying, even elements that are incapable of copyright protection." *Tanksley*, 902 F.3d at 173.

But actual copying, by itself, is "insufficient to support an infringement claim because a copyright only protects the holder's particular creative expression, not his ideas." *Id.* at 174. Accordingly, "the defendant is only liable for infringement if his work is substantially similar to the protected elements of the copyrighted work." *Id.* Two works are substantially similar if "the ordinary observer, unless he set out to detect the disparities [in the two works], would be disposed to overlook them, and regard their aesthetic appeal as the same." *Id.* (alteration in original) (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960) (Learned Hand, J.)). Substantial similarity "'is usually an extremely close question of fact,' which is why even

'summary judgment has traditionally been disfavored in copyright litigation.'" *Id.* at 171 (quoting *Twentieth Century–Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1330 n.6 (9th Cir. 1983)).

### i.    *Actual Copying*

Defendants argue Plaintiff failed to prove actual copying because (a) Defendants' designer hand-sketched the designs and (b) the motifs in both sets of rugs materially differ in "number, size, shape, color, and pattern repeat." (Defs.' Moving Br. at 29–30.) Both arguments miss the mark.

Initially, the mere fact that Defendants' designer hand-sketched the Disputed Designs is irrelevant; the question is whether Defendants had a reasonable possibility of seeing the Original Designs. *Bruzzese*, 2025 WL 1779217, at *7 (alteration in original) (quoting *Jorgensen*, 351 F.3d at 51). Before Defendants made rugs with the Disputed Designs, Well Woven's CEO emailed their designer pictures of the Original Designs. (*See* Pls.' Ex. E, ECF No. 107-8.) So, there was access. And the rugs appear similar. But whether those similarities are *probative* is a question for the trier of fact. *See Bruzzese*, 2025 WL 1779217, at *7 ("[W]hether there are probative similarities between the urn designs and whether Defendant's story of independent creation is credible are questions for the trier of fact."); *Design With Friends*, 2024 WL 4103737, at *4 (denying summary judgment where there was dispute over probative similarity). "In short, the Court cannot determine based on the record before it that no reasonable jury, properly instructed, could find that there are probative similarities between the two works." *Bruzzese*, 2025 WL 1779217, at *7. The Court, therefore, denies summary judgment as to actual copying.

### ii.    *Substantial Similarity*

Next, Defendants argue the Original and Disputed Designs are not substantially similar. (Defs.' Moving Br. at 33–36.) While Defendants note both Designs have "free-flowing floral patterns," they argue "[f]ree-flowing floral patterns are typical in the rug industry and, standing

alone, this does not demonstrate copyright infringement." (*Id.* at 33–34.) Defendants then list a number of differences between both Designs, arguing that the Original Designs have fewer, thicker, and longer branches, whereas the Disputed Designs have thinner, more delicate branches. (*Id.* at 35.) The branches in the Original Designs do not break; the branches in the Disputed Designs do. (*Id.*) The Original Designs feature larger, more detailed motifs; the Disputed Designs are more stylized and abstract. (*Id.*) The flowers used in both Designs differ in shape, size, and color. (*Id.*) The Original Designs have bigger leaves; the Disputed Designs place differently shaped leaves in the background. (*Id.*) And the colors in both designs are different. (*Id.*)

As discussed above, works are substantially similar if a lay person "would believe that the copying was of protectible aspects of the copyrighted work." *Tanksley*, 902 F.3d at 174 (quoting *Dam Things from Den.*, 290 F.3d at 562). "To answer this question, the trier of fact performs a side-by-side comparison of the works and, excluding any unprotectable elements, assesses whether the two works are substantially similar." *Id.* Substantial similarity "is usually an extremely close question of fact," which is why even "summary judgment has traditionally been disfavored in copyright litigation." *Tanksley*, 902 F.3d at 171 (quoting *Twentieth Century–Fox Film Corp. v. MCA, Inc.*, 715 F.2d at 1330 n.6 (9th Cir. 1983)). Nevertheless, courts will dismiss an infringement action if they conclude that "no trier of fact could rationally determine the two [works] to be substantially similar." 3 *Nimmer on Copyright* § 12.10[B][3] (rev. ed. 2018); *Tanksley*, 902 F.3d at 171–72.

Having carefully reviewed the Original and Disputed Designs, the Court finds similarities and differences between them. But whether branches are too thick, leaves are too small, or flowers are too abstract is a question best left to the factfinder. "[T]he trier of fact must resolve the factual judgment of whether those similarities are substantial as this Court cannot determine, based on the

17

record before it, that no reasonable jury, properly instructed, could find that the two works are substantially similar." *Bruzzese*, 2025 WL 1779217, at *11. *See also Design With Friends, Inc.*, 2024 WL 4103737, at *4; *Harney v. Sony Pictures Television, Inc.*, 704 F.3d 173, 178 (1st Cir. 2013); *Yankee Candle Co. v. Bridgewater Candle Co., LLC*, 259 F.3d 25, 34 n.5 (1st Cir. 2001); *Malibu Media, LLC v. Doe*, 82 F. Supp. 3d 650, 653 (E.D. Pa. 2015); *Midway Mfg. Co. v. Bandai-Am., Inc.*, 546 F. Supp. 125, 139 (D.N.J. 1982). Accordingly, the Court denies Defendants' motion for summary judgment as to the substantial similarity element of copyright infringement.

## IV.    **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 104) is **DENIED**. Plaintiff's motion for partial summary judgment (ECF No. 107) is **DENIED**. An appropriate Order accompanies this Opinion.

DATED: 12/29/2025

HONORABLE JULIEN XAVIER NEALS
United States District Judge

18